MILTON I. SCHWARTZ, Appellant/Cross-Respondent, *v.* PETER ELIADES, Respondent/Cross-Appellant.

No. 27232

May 22, 1997

939 P.2d 1034

*Berkley & Gordon,* Las Vegas, for Appellant/Cross-Respondent.

*James J. Brown,* Las Vegas, for Respondent/Cross-Appellant.

## OPINION

*Per Curiam:*

This is an appeal from a district court order granting respondent's motion for summary judgment on the basis of champerty

and a cross-appeal from an order granting appellant's motion for summary judgment on appellant's counterclaim for return of consideration on a void contract. We reverse the order of summary judgment and remand the case for resolution of the claim. Because the ultimate resolution of the claim has a direct bearing on the outcome of the counterclaim, we also reverse and remand the district court's order granting summary judgment on the counterclaim.

Milton I. Schwartz, Peter Eliades, and four other individuals each owned one-sixth of Checker Cab Company of Nevada, Inc. ("Checker Cab") and Yellow Cab Company of Nevada, Inc. ("Yellow Cab"). In response to a newspaper article, the companies and Schwartz, as an individual, brought a defamation lawsuit in the Eighth Judicial District Court in Clark County, Nevada.

During the course of the defamation litigation, a majority of the owners of Checker Cab and Yellow Cab sought to eliminate their exposure to attorney's fees and costs resulting from the lawsuit. Schwartz executed documents with Checker Cab and Yellow Cab in which Schwartz undertook all liability for past and future expenses related to the litigation and would receive all proceeds, if any, from the litigation. Yellow Cab and Checker Cab remained named plaintiffs but assigned all financial interest in the outcome in the litigation to Schwartz. Minutes of the special meeting in which Yellow and Checker Cab companies' Boards of Directors and shareholders decided to assign the costs and proceeds of the litigation to Schwartz reflect that: "it is very important to the Corporation[s] that [they] continue with the lawsuit to a favorable conclusion thus resulting in there being no question concerning the actions and reputation of the Corporation[s]."

Approximately six months thereafter, Schwartz and Eliades entered a contractual agreement in which Eliades would be entitled to one-half of any proceeds from the litigation in exchange for paying Schwartz $187,421.50 plus one-half of any costs related to the litigation due and one-half of any costs which might be incurred in the future. At or near the time Schwartz and Eliades executed the contract, Eliades paid Schwartz the sum of $72,673.63. The defamation lawsuit resulted in a verdict against Schwartz and the companies. Schwartz appealed on behalf of the three plaintiffs, and this court issued an opinion[1] in favor of the respondents.

Other than the initial sum, Eliades made no payments to Schwartz. Schwartz initiated a lawsuit for breach of the contract, and Eliades counterclaimed for return of the money he advanced

---

[1]Schwartz v. Estate of Greenspun, 110 Nev. 1042, 881 P.2d. 638 (1994).

to Schwartz in reliance on the contract. Eliades brought a motion for summary judgment claiming that the contract was void as a matter of law. The district court granted summary judgment in favor of Eliades, finding the agreement unenforceable ''as void by reason of champerty.''

Schwartz appealed to this court, which resulted in a finding of lack of jurisdiction because no final, appealable order had resolved the case. The court issued an order dismissing the appeal under NRCP 54(b),[2] based on the district court's failure to address Eliades' counterclaim. Subsequently, in the district court, Schwartz filed a countermotion for summary judgment regarding the counterclaim, which the district court granted.

Now that the district court has resolved all the issues in a final, appealable order, Schwartz appeals the summary judgment on the claim that the contract is void due to champerty, and Eliades cross-appeals the summary judgment on his counterclaim for return of the money paid under the void contract.

Summary judgment is only appropriate when the moving party is entitled to judgment as a matter of law, and, after a review of the record viewed in a light most favorable to the non-moving party, there remain no genuine issues of material fact. Marshall v. Eighth Judicial District Court, 108 Nev. 459, 463, 836 P.2d 47, 50 (1992); Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 663 (1985). This court's review of a summary judgment order is de novo. Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

''A champertous agreement is one in which a person without interest in another's litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation.'' Martin v. Morgan Drive Away, Inc., 665 F.2d 598, 603 (5th Cir. 1982), cert. dismissed, 458 U.S. 112 (1982). ''To maintain the suit of another is now, and always has been, held to be unlawful, unless the person maintaining has some interest in the subject of the suit.'' Lum v. Stinnett, 87 Nev. 402, 408, 488 P.2d 347, 350 (1971) (citing Gruber v. Baker, 20 Nev. 453, 23 P. 858, 862 (1890)). ''Where a person promoting the suit of another has any interest whatever, legal or equitable, in the thing

---

[2]NRCP 54(b) states, in relevant part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, [or] cross-claim, . . . any order . . . which adjudicates fewer than all the claims . . . shall not terminate the action . . . [and] is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

demanded, . . . he is in effect also a suitor according to the nature and extent of his interest.'' McIntosh v. Harbour Club Villas Condominiums, 421 So. 2d 10, 11 (Fla. Dist. Ct. App. 1982).

In *Martin,* the court found no champerty, stating that since the investor in the litigation had an interest in addition to his financial interest, the agreement was not champertous. 665 F.2d at 603. The *Martin* court also stated that even if the investor had no interest-in-fact in the litigation, but had a reasonable belief that he was an interested party, the agreement would not be champertous. *Id.* at 606 n.6.

Schwartz argues that, because the three plaintiffs in the defamation lawsuit included two companies of which Eliades is a one-sixth shareholder, Eliades had an interest in the litigation. Schwartz contends that Eliades, as part owner of the corporate plaintiffs, had an *equitable* interest in having there be ''no question concerning the actions or reputation of the Corporation.'' He also argues that Eliades' interest remained even after the companies assigned their *financial* interests in the outcome of the litigation to Schwartz.[3] In addition, Schwartz contends that Eliades ''clearly was of the impression that he had a significant personal interest in the outcome of the defamation action even before entering into the written Agreement which is the subject of this appeal.''

Eliades argues that, although he originally had a one-sixth interest in the litigation through his ownership interest in the cab companies, he lost that interest when the companies assigned their interest to Schwartz. He contends that his sole interest in the litigation was the potential money recovery from his investment. Eliades also argues that he had no interest in the litigation whatsoever for the six months between the time the companies gave Schwartz their interest and the time Eliades became a one-half investor in Schwartz' enterprise. He further argues that the district court explicitly found that, following the execution of the agreement between Schwartz and the companies, Schwartz owned all rights and interests of the companies and their shareholders. Therefore, Eliades argues that the contract was clearly champertous, as his sole interest was to fund Schwartz' activities in pursuing the litigation with the hope for a large money recovery.

We conclude that, because the cab companies retained an

---

[3]Schwartz also argues that since defamation is a personal cause of action and is personal to the plaintiff, it can not be assigned. However, he provides no authority for this premise. This court will not consider an issue if no relevant authority is presented on appeal. Cunningham v. State, 94 Nev. 128, 575 P.2d 936 (1978).

equitable interest in the litigation after assigning their financial interests to Schwartz, Eliades maintained his portion of that interest in the litigation, and, therefore, was not a stranger to the lawsuit when he joined Schwartz. We conclude that Eliades merely enlarged his interest by investing with Schwartz, and that his contract with Schwartz fails to meet the requirements of champerty. Therefore, we conclude that, although no genuine issues of material fact remained at the time the district court granted Eliades' motion for summary judgment, the district court erroneously concluded that the contract was champertous and that Eliades was entitled to judgment as a matter of law. Accordingly, we conclude that the district granted Eliades' summary judgment motion in error.

Eliades argues that a party making payments under an unenforceable agreement is entitled to restitution of any money paid. In George Foreman Associates v. Foreman, 389 F. Supp. 1308 (N.D. Cal. 1974),[4] the court concluded that the contract at issue was illegal; nonetheless, to allow a party to be unjustly enriched by keeping money paid under an illegal agreement would be inequitable. Similarly, Eliades argues that allowing Schwartz to retain what was paid under the void agreement is tantamount to giving Schwartz recovery under the contract.

The district court, ruling from the bench on the counterclaim, stated: ''To allow the defendant to recover sums already paid under a void agreement would allow the defendant to take advantage of his own wrongdoing whereby he encouraged the plaintiff to litigate a cause of action to which he is a stranger and has not suffered any personal damages because of the alleged defamation.'' *See* Martinez v. Johnson, 61 Nev. 125, 129, 119 P.2d 880, 882 (1941)(court will not enforce rights under a contract made in disobedience of the law). We agree.

Although we concluded above that the district court erred by finding champerty, had there actually been a champertous agreement, Eliades would not have been entitled to restitution of the money he paid under the void agreement. The district court concluded, based on its finding of champerty, that Eliades was not entitled, under the counterclaim, to a return of the money paid under the void contract. However, the district court's order granting summary judgment on the counterclaim must be reversed. We have concluded that summary judgment should not have been entered on Schwartz' claim, and the ultimate resolution of that claim has a direct bearing on the outcome of the counterclaim. We thus conclude that the district court erred by granting

---

[4] Affirmed in Foreman v. George Foreman Associates, 517 F.2d 354 (9th Cir. 1975).

summary judgment to Eliades, since, although no genuine issues of material fact remained, the district court erroneously found that the contract was champertous and that Eliades was entitled to judgment as a matter of law.

Accordingly, we reverse and remand the order granting summary judgment regarding the breach of contract claim, and we also reverse and remand the district court's order granting summary judgment on the counterclaim.[5]

---

[5]THE HONORABLE A. WILLIAM MAUPIN, Justice, voluntarily recused himself from participation in the decision of this appeal.